UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:11-CV-00114-M

**SANDRA PROPS and SAM PROPS**                                              **PLAINTIFFS**

**V.**

**MAMMOTH ONYX CAVE, INC.**
**d/b/a KENTUCKY DOWN UNDER**                                               **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment [DN 19]. Fully briefed, it is ripe for decision. For the following reasons, the Defendant's motion is **DENIED**.

### I. BACKGROUND

On August 1, 2010, Plaintiffs Sandra Props and Samuel Props took their ten-year-old grandson to Kentucky Down Under ("KDU") in Horse Cave, Kentucky. KDU is an attraction that provides its visitors with access to unique Australian animals and their habitats. During their visit, the Plaintiffs went to the "Outback Walkabout" to view the kangaroos on the premises. When walking toward the kangaroos, however, Mrs. Props stepped into a hole or indentation, causing her to trip and fall. As a result of the fall, she sustained serious injuries to her left ankle.

The area in which Mrs. Props fell was grassy and weedy. (See Response to Interrogatory No. 18; Deposition of Sandra Props 39.) She describes it as being "just bumpy, like a bumpy old yard would be" and not "like a nice, manicured lawn." (Deposition of Sandra Props 30–32.) Mr. Props similarly describes the area as a grassy field, noting that it was "just what would grow in an animal pen." (Deposition of Sam Props 9.) This testimony is consistent with that of the Defendant. For example, KDU's tour guide who escorted the Plaintiffs' group on August 1, 2010 testified that the area is the "natural terrain of Kentucky," (Deposition of Shannon Sharpensteen 7.), and KDU's

owner testified that the area is a "natural setting." (Deposition of Judy Austin 9.) Similarly, KDU's Groups and Outreach Coordinator testified that the ground is "not level by any means," noting KDU's attempt to keep the surface natural for the animals. (Deposition of Candace Forsythe 9, 14.)

Mrs. Props testified that she had never visited KDU prior to the date of her fall. (Deposition of Sandra Props 15.) She further testified that she had not already walked across the area where she fell and that she had never seen the hole that caused her to trip before she fell. (Id. at 36.) According to Mrs. Props, the hole "wasn't obvious to [her] or [she] wouldn't have stepped in [it]." (Id. at 38.) Mrs. Props acknowledges, however, that she did not expect to find a nice, manicured lawn, as she came to see the animals in the wild. (Id. at 31–32.)

Testimony is conflicting regarding the dimensions of the hole or indentation in which Mrs. Props tripped. A witness to the incident on August 1, 2010 describes the area in which Mrs. Props tripped as being grassy with "potholes," stating that Mrs. Props "more or less stepped on the edge [of a hole] and twisted her ankle and fell down." (Deposition of Keith Watts 11.) KDU's Marketing Director, however, stated that upon inspection of the premises after Mrs. Props' fall, she could not even find a hole, only a small indentation. (Deposition of Melissa McGuire 12.) Testimony is also conflicting regarding the source of the hole or indentation. At least some testimony indicates that it may have been a "wallow." (Id. at 12–13.) Wallows are created when kangaroos rub the ground to rid themselves of external parasites. (See Deposition of Judy Austin 26–27.)

In regards to warnings, KDU has represented that a sign was posted at KDU's Visitor Information Center on the day in question. This warning sign states as follows:

**PLEASE READ**

**Kentucky Down Under (KDU) reserves the right to refuse or revoke admission to anyone who engages in or appears to be engaging in**

> **inappropriate or offensive conduct, as determined by the staff.  KDU is not responsible for lost, stolen or damaged articles.  KDU does not close for inclement weather and is not required to issue refunds or exchanges.  All guests entering Kentucky Down Under grounds grant permission to KDU to utilize his or her image or any recordings for any purpose without payment.**
>
> **ENTER AT YOUR OWN RISK**
>
> **You will be entering into the natural habitats of exotic animals and entering a cave.  By purchasing an admission you assume all risk and liability associated with this activity.**

(Def.'s Mot. for Summ. J. [DN 19] Ex. B.)  The Plaintiffs, however, do not recall if this sign was posted at the Visitor Information Center on the day in question.  (Id. at Ex. C.)  Likewise, a witness to the incident stated that he did not see any warning signs on the day that Mrs. Props fell.  (Deposition of Keith Watts 37–38.)  Further, in regards to warnings, the tour guide who escorted the Plaintiffs' group on August 1, 2010 testified that she verbally warned them that the ground in the Outback Walkabout may be uneven and told them to watch their step.  (Deposition of Shannon Sharpensteen 13, 20–21.)  However, the witness stated that no one gave his group a warning about the ground's surface and that other than in the cave area, no one told them to watch their step.  (Deposition of Keith Watts 17.)

When asked why she did not see the hole or indentation in which she tripped, Mrs. Props responded: "Because I don't–I do now, but I didn't before watch every step I take and everything . . . ."  (Deposition of Sandra Props 40–41.)  She also asserted that she did not see the hole because the "general unevenness in the ground was covered by grass" and further because "she was watching the kangaroos and her grandson."  (Response to Interrogatory No. 13.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

The Defendant argues that it is entitled to summary judgment because KDU did not have a duty to protect Mrs. Props from the hole or indentation in which she fell, as it was as obvious to her as it was to KDU. The Plaintiffs counter that: (1) if the hole or indentation in which Mrs. Props fell was a kangaroo's wallow, the law relating to natural outdoor hazards does not apply because kangaroos are not natural to Kentucky; (2) the hole or indentation was not as obvious to Mrs. Props as it was to KDU; and (3) there is a genuine dispute of fact as to whether KDU provided sufficient

4

warnings about the ground's uneven surface. The Court considers these arguments in turn.

The Defendant argues that KDU did not have a duty to protect Mrs. Props since "the owner of a business premises has no duty to protect invitees from injuries caused by 'natural outdoor hazards which are as obvious to an invitee as to an owner of the premises.'" Horne v. Precision Cars of Lexington, Inc., 170 S.W.3d 364, 368 (Ky. 2005) (quoting Standard Oil Co. v. Manis, 433 S.W.2d 856, 858 (Ky. 1968)). The parties then engage in a great deal of discussion regarding whether the hole or indentation in which Mrs. Props tripped was a "natural outdoor hazard." The Court finds that the Kentucky Supreme Court's decision in Kentucky River Medical Center v. McIntosh, 319 S.W.3d 385 (Ky. 2010), makes it of little relevance whether the hole or indentation in which Mrs. Props tripped is a natural outdoor hazard or not.

Prior to the McIntosh decision, Kentucky law was "not generous to business invitees who suffer[ed] an injury as a result of a risk created by an obvious, outdoor natural condition . . . ." Gaff v. Johnson Oil Co., 45 Fed. App'x 499, 501 (6th Cir. 2002). The general rule was that "the owner of a business premises [had] no duty to protect invitees from injuries caused by 'natural outdoor hazards which [were] as obvious to an invitee as to an owner of the premises.'" Horne v. Precision Cars of Lexington, Inc., 170 S.W.3d 364, 368 (Ky. 2005) (quoting Standard Oil Co. v. Manis, 433 S.W.2d 856, 858 (Ky. 1968)). Of course, "the applicability of this bright-line rule turned upon whether the condition was open and obvious." Lahutsky v. Wagner Moving & Storage, Inc., 2011 WL 5597330, at *5 (W.D. Ky. Nov. 17, 2011). "If the condition was open and obvious, a landowner had no duty to protect, but if it was not open and obvious, then the landowner had a duty to use reasonable precautions to protect invitees from injury resulting from the condition." Id. Kentucky courts have held that a danger is "obvious" when "both the condition and the risk are apparent to and

would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment." Bonn v. Sears, Roebuck & Co., 440 S.W.2d 526, 529 (Ky. 1969).

In McIntosh, however, the Kentucky Supreme Court modified the open and obvious doctrine, making it more compatible with Kentucky's comparative fault regime. 319 S.W.3d 385, 389–90 (Ky. 2010). The case arose when a paramedic tripped over an unmarked curb located between an ambulance dock and a hospital's emergency room doors, suffering a fractured hip and sprained wrist. Id. at 387–90. At the time of the fall, the paramedic was not focused on the curb. Instead, she was helping transport a critically-ill patient into the hospital's emergency room. Id.

The hospital moved for summary judgment, arguing that the open and obvious doctrine barred the paramedic's recovery. McIntosh, 319 S.W.3d at 388. Its motion was denied by the trial court. On appeal, the denial was affirmed, and the Kentucky Supreme Court granted discretionary review. Id. In its decision, the Kentucky Supreme Court affirmed the lower courts' ruling. Id. at 387. In so doing, it adopted the modern trend on premises liability as expressed in the Restatement (Second) of Torts § 343A(1) (1965). Id. at 389–90. The Kentucky Supreme Court explained its newly-adopted position as follows:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, **unless the possessor should anticipate the harm despite such knowledge or obviousness.**

Id. at 389 (citation omitted). It then elaborated by stating that there are cases where a land possessor "can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." Id. After McIntosh, therefore, premises liability is focused on the foreseeability of the invitee's injury.

6

The Defendant claims that McIntosh is inapplicable to cases involving natural outdoor hazards. The Court disagrees. The Kentucky Court of Appeals has interpreted McIntosh to apply to natural outdoor hazard cases. In Bruner v. Miami Management Co., the court recognized the defendant's argument that "McIntosh should be narrowly applied to its facts, i.e. when the danger is manmade, not when the danger is the result of a natural hazard." 2012 WL 1484056, at *4 (Ky. App. Apr. 27, 2012). The court then asserted, however, that it did "not read McIntosh that narrowly." Id. The Kentucky Court of Appeals has also rendered additional decisions interpreting McIntosh in this regard. See, e.g., Resnick v. Patterson, 2012 WL 3236613 (Ky. App. Aug. 10, 2012) (applying McIntosh when the plaintiff fell in a hole in the defendant's backyard); Webb v. Dick's Sporting Goods, 2011 WL 3362217 (Ky. Ct. App. Aug. 5, 2011) (applying McIntosh when the plaintiff slipped on a wet tile on the defendant's premises after it had rained). The Court also finds guidance from other federal courts in Kentucky, as they have rendered decisions supporting this conclusion. For example, Magistrate Judge Robert E. Wier wrote that "[n]othing in the plain language of McIntosh limits its holding to man-made hazards . . . ." Schmidt v. Int'l Hotels Grp. Res., Inc. & Hotel, 850 F. Supp. 2d 663, 672 (E.D. Ky. 2012); accord Powers v. Tirupathi Hospitality, LLC, 2011 WL 251001, at *4 (E.D. Ky. Jan. 26, 2011) (holding that "the Kentucky Supreme Court intended for its decision in McIntosh to apply to all premises owner liability claims, including cases involving purportedly open and obvious outdoor natural hazards"). Similarly, Judge Thomas B. Russell applied McIntosh and denied summary judgment after a truck driver slipped on ice and fell down a set of external stairs on the defendant's premises. Lahutsky v. Wagner Moving & Storage, Inc., 2011 WL 5597330 (W.D. Ky. Nov. 17, 2011). Therefore, based on these decisions, the Court holds that McIntosh applies to premises liability cases involving natural outdoor hazards.

Unfortunately, the parties focus on issues that are no longer focal points of Kentucky law. Notwithstanding, the Court finds that a proper, post-McIntosh analysis can be completed based on the current record. To begin this analysis, the Court must determine whether the condition of the land which posed the danger to Mrs. Props was known and obvious to her.

Despite the Plaintiffs' attempt to establish that the dangerous condition of the Outback Walkabout was not obvious to first-time visitors at KDU, the Court finds that there is no genuine dispute as to whether it was. The facts of Resnick v. Patterson, 2012 WL 3236613 (Ky. App. Aug. 10, 2012), are illustrative. In that case, the plaintiff stepped into a hole, which he believed had been dug by a dog, that was located next to tree roots while walking in the defendant's backyard. Id. at *1. The court declared that "any alleged holes or unevenness in [the defendant's] backyard was an open and obvious hazard." Id. at *3. It similarly declared that any person "exercising 'reasonable perception, intelligence, and judgment' would anticipate naturally occurring holes and unevenness in yards where trees and other naturally occurring hazards exist and would take precautions accordingly." Id. (citation omitted). In this case, while Mrs. Props did not fall in a backyard, the same holding should apply. Mrs. Props was in a grassy, weedy field of Kentucky terrain. She acknowledges that she did not expect to find a nice, manicured lawn. Mrs. Props knew that she was outside in an area where she could view kangaroos. She likewise knew that the field remained rustic and in its natural state. Persons exercising reasonable perception, intelligence, and judgment would have recognized these facts and anticipated that the ground could contain holes, indentations, and general unevenness. As such, the land's dangerous condition was known and obvious to Mrs. Props.

Other cases support this conclusion. For example, in Radford v. National Whitetail Deer Education Foundation, a patron fell in a hole in a grassy field while attending a fundraiser. 2011

WL 334817, at *1 (Ohio App. Jan. 31, 2011). The court held that she "had knowledge of conditions that should have caused her to recognize that the ground was potentially hazardous." Id. at *3. Its holding was based on the fact that the patron was "at an outdoor event held in an open, grassy field, an area that remains rustic in nature, and which will invariably contain various dips, holes and contours." The fact that the hole was obscured by grass did not obviate her general knowledge of the ground conditions. Id. A similar conclusion was reached in Young v. Local 775 Housing Ass'n, 1997 WL 282367 (Ohio App. May 30, 1997). There, the court found that depressions in the ground are ordinary hazards that "one would expect to find when stepping from a paved surface to adjacent ground." Id. at *7. Also, in Hoffman v. City of New Orleans, the court found that any grass covered field "is bound to contain dips and inclines no matter what maintenance is performed," noting that holes "can easily develop in any open field." 771 So.2d 217, 219 (La. App. 2000). Thus, the Court concludes that while Mrs. Props may have been unaware of the specific features of a kangaroo's Australian habitat, it defies common sense to say that she did not recognize the risks associated with walking in a grassy field. The hazard was known and obvious. As instructed by McIntosh,

> The lower courts should not merely label a danger as "obvious" and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable.

McIntosh, 319 S.W.3d at 392. Therefore, the questions become whether KDU could have foreseen Mrs. Props' injury and, if so, whether it failed to take reasonable precautions to prevent the injury.

The Kentucky Supreme Court in McIntosh detailed three circumstances where injuries are foreseeable–and thus where land possessors owe a duty to invitees despite the obviousness of a condition. Id. at 393. First, a land possessor owes a duty when it is foreseeable that an invitee may

9

be distracted from the danger. For example, the hospital owed the paramedic a duty in <u>McIntosh</u> since it was foreseeable that the paramedic would be focused on critically-ill patients and distracted from the curb when approaching the emergency room's doors. <u>Id.</u> Second, a land possessor owes a duty when it is foreseeable that an invitee may forget the danger previously discovered. The evidence in <u>McIntosh</u>, for example, showed that the emergency room entrance was different from other entrances in the region, and the high-stress nature of the paramedic's job could have caused her to forget that the particular entrance was different. <u>Id.</u> at 394. Third, a land possessor owes a duty when it is foreseeable that an invitee may choose to encounter the danger because the advantages of doing so outweigh the apparent risks. For example, in <u>McIntosh</u>, the benefits of the paramedic rushing to the door at the risk of falling outweighed the costs of her failing to do so (i.e. the patient's condition worsening). <u>Id.</u>

 The Court finds that it is easily foreseeable by KDU that an invitee might be distracted while walking in the Outback Walkabout. The whole attraction of KDU is that the general public can view Australian animals in their habitats. KDU's visitors are taken on guided tours near the kangaroos and emus, and they are told by their tour guides to watch the animals, pet them, and take pictures of them. Many visitors have young children with them. Distractions are abundant. Furthermore, it is foreseeable that an invitee might forget the danger previously noticed. Mrs. Props testified that she knew she was walking in a grassy, weedy field. However, the surrounding atmosphere could have caused her to forget that holes or indentations might be present. In the Outback Walkabout, the tour guide speaks to the group while leading them near the animals, stopping them at various points throughout the guided tour. With these intermittent stops, as well as with the talking between visitors that is bound to accompany any touring group, KDU could foresee that its visitors might

forget to watch their step.  This is especially true considering that the visitors might be on KDU's premises for the first time.  It is also true considering that the visitors walk on different surfaces in the Outback Walkabout, including a wooden, platform area and a grassy field.  (See Deposition of Sandra Props 33.)

The Defendant argues that Mrs. Props was not "distracted" because she was not acting under time-sensitive or stressful circumstances.  The basis for this argument is Lucas v. Gateway Community Services Organization, Inc., where an invitee brought suit after she tripped when moving from a parking lot's blacktopped portion to its graveled area.  343 S.W.3d 341, 342 (Ky. App. 2011).  In Lucas, the Court granted summary judgment, finding that:

> Unlike the plaintiff in McIntosh, Lucas was not distracted by some outside force, such as rushing an ill patient into the hospital.  As Gateway and Stacey point out, Lucas was not acting under time-sensitive or stressful circumstances.  Rather, she was following her friend into the parking lot that she admitted she was familiar with and that she admitted to using caution to walk on when she visited the premises.

Id. at 346.  Here, however, the evidence in the record could lead a reasonable jury to conclude that Mrs. Props was distracted by outside forces.  Acting under time-sensitive and stressful circumstances is not the only way a person can be distracted.  The Court finds that Mrs. Props' distraction and resultant injury were foreseeable.

Having found that the injury was foreseeable, KDU had a duty under McIntosh to take reasonable precautions to prevent injuries.  These reasonable precautions could have existed in the form of adequate warnings.  In this case, KDU represented that a warning sign was posted at its Visitor Information Center on August 1, 2010.  Evidence was also presented that KDU's visitors were given verbal warnings about the ground's surface by their tour guide.  Contrary evidence, however, suggests that a warning sign was not posted at the Visitor Information Center on the day

in question and that verbal warnings were not given as to the ground's surface in the Outback Walkabout. Based on this conflicting evidence, the Court concludes that there are genuine issues of material fact as to whether warnings were provided as to the ground's surface and, if so, whether they were adequate. Due to these genuine disputes, summary judgment is inappropriate.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment [DN 19] is **DENIED**.

                                                **Joseph H. McKinley, Jr., Chief Judge**
                                                      **United States District Court**

                                                                      October 15, 2012

cc: counsel of record